**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

UNITED STATES OF AMERICA                                              PLAINTIFF

VS.                                              CIVIL ACTION NO: 3:06-cv-00475-HTW-LRA

ONE 2004 NISSAN MAXIMA
VIN 1N4BA41E44C889659 and
ONE 2003 CHEVROLET TAHOE
VIN 1GNEC13Z33R151161                                                DEFENDANTS

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

Before the court is the motion of the claimant Felecia Perkins, Esq.[1] (hereinafter "claimant"), for summary judgment under Rule 56(c)[2] of the Federal Rules of Civil Procedure, or, in the alternative, for entry of a scheduling order and a trial date [**Docket No. 21**]. The claimant asserts this claim against the defendant 2003 Chevrolet Tahoe, VIN 1GNEC13Z33R151161 (hereinafter "Tahoe"). Additionally, the Citizens National Bank in Philadelphia, Mississippi has filed a statement of interest in the Tahoe, but is not participating in the instant case. The 2004 Nissan Maxima, VIN 1N4BA41E44-C889659, is not sought by either the claimant or the Citizens National Bank of Philadelphia in this case.

---

[1] Felicia Perkins is an attorney.

[2] Rule 56(c) of the Federal Rules of Civil Procedure provides in pertinent part that, "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

**FACTUAL BACKGROUND**

On August 29, 2006, the United States of America filed the instant complaint for forfeiture against the Tahoe, an in rem proceeding to enforce the provisions of Title 18 U.S.C. § 981(a)(1)(C)$^3$ for the forfeiture of property which was derived from proceeds traceable to a violation of Title 18 U.S.C. §2113.$^4$  In support of its forfeiture action against the Tahoe, the United States contends that this vehicle was purchased with funds derived from a robbery of the Citizens National Bank in Philadelphia, Mississippi, which allegedly was committed by one William Syntell Matthews' (hereinafter "Matthews") on October 13, 2005.  The claimant in this case is an attorney retained by Matthews.

---

$^3$Title 18 U.S.C. 981(a)(1)(C) provides in relevant part that the following property is subject to forfeiture: ... [a]ny property, real or personal, which constitutes or is derived from proceeds traceable to ... *any offense constituting "specified unlawful activity"* (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense (including bank robbery under 18 U.S.C. § 2113)(emphasis added).

$^4$Title 18 U.S.C. § 2113(a) provides that, "[w]hoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or

Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny--

Shall be fined under this title or imprisoned not more than twenty years, or both."

The claimant Perkins asserts that on August 30, 2006, the Tahoe was seized from her possession by the United States and is now being held unlawfully and without a hearing. The claimant contends that she obtained the Tahoe legally from Matthews in early January, 2006, as partial payment of legal fees owed to the claimant for representing Matthews in connection with his arrest and prosecution for another robbery on December 29, 2005, against the Cadence Bank in Neshoba County, Mississippi. The claimant says that she incurred $3,759.34 in repair expenses in the process of taking possession of the Tahoe as partial payment for her legal services. The claimant also asserts that her client Matthews has not been charged with the October 13, 2005, robbery of the Citizens Bank, the robbery forming the basis of this complaint for forfeiture. The claimant further contends that the United States has not yet indicated that it would bring charges against Matthews for the October 13, 2005, bank robbery, and that the United States does not maintain that the Tahoe was purchased with any funds derived from the December 29, 2005, bank robbery, the crime for which Matthews sought and obtained the claimant's legal services.

The claimant submits in support of her motion for summary judgment, or for a hearing and trial date, a contract for her services signed by Matthews; a receipt from Capitol Body Shop of Ridgeland, Mississippi, for repairs in the amount of $3,759.34; a sales statement for the Tahoe showing one Jeremy Washington, not Matthews, as the purchaser on October 4, 2005, for the price of $25,500.00; a transcript of a phone conversation between the claimant and Margie Matthews, the mother of William Matthews, stating that she, Margie Matthews, was the owner of the Tahoe, and not

her son; and an original Certificate of Title in the name of the claimant Felecia Perkins dated February 4, 2006.

Based on these assertions and documentary evidence, the claimant asks this court to grant her motion for summary judgment and possession of the Tahoe. The claimant says she did not know of Matthew's conduct at the time she acquired her enforceable legal and equitable interests in the Tahoe. The claimant says she is an innocent owner entitled to the protections provided to innocent owners by Title 18 U.S.C. § 983(d)(1).[5]

The United States responds that the claimant either knew or should have known that the Tahoe had been purchased with the proceeds of illegal activity. Based on its continuing investigation of this matter, says the United States, Matthews is the person responsible for robbing the Citizens National Bank of Philadelphia, Mississippi, of $65,798.00 on October 13, 2005, while displaying a handgun and using it in a threatening manner. Then, says the United States, on December 29, 2005, Matthews, robbed the Cadence Bank of Neshoba County, Mississippi, taking $5,742.00 while using a handgun. After Matthews was captured, says the United States, he admitted robbing the Cadence Bank and provided a written statement of his admission. Then,

---

[5]Title 18 U.S.C. § 983(d) provides for the innocent owner defense, stating that, "(1) An innocent owner's interest in property shall not be forfeited under any civil forfeiture statute. The claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of the evidence. (2)(A) With respect to a property interest in existence at the time the illegal conduct giving rise to forfeiture took place, the term "innocent owner" means an owner who– (I) did not know of the conduct giving rise to forfeiture; or (ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property."

4

Matthews entered into a contract for legal services with the claimant Perkins on January 9, 2006.  Contrary to the claimant's assertion that Matthews has not been charged with the October 13, 2005, robbery, the United States says that, after its investigation, Matthews was charged with robbing the Citizens Bank of Philadelphia.  On June 30, 2006, says the United States, Matthews pled guilty to two counts of armed robbery in the Circuit Court of Neshoba County, Mississippi, and was sentenced to ten years in prison on each count to be served consecutively.

      The United States says its investigation of these robberies has revealed that Matthews rented a residence located at 49-B Meadowoods Terrace in Ridgeland, Mississippi;  that one Jeremy Washington was a roommate of Matthews';  that the United States subpoenaed the bank records of Jeremy Washington and found that $47,140.00 had been deposited to Washington's account on October 14, 2005, the day after Matthews robbed $65,798.00 from the Citizens National Bank of Philadelphia, Mississippi; that on October 8, 2005, and October 10, 2005, just before the robbery, vehicle purchase orders were processed by North Park Mazda in Ridgeland, Mississippi, for a 2003 Chevrolet Tahoe which is the seized property in this matter, and a 2004 Nissan Maxima;  that Jeremy Washington was listed as the purchaser on both vehicles; that Washington wrote two checks to purchase the vehicles, one in the amount of $21,234.70 to purchase the Maxima, and another in the amount of $25,500.00 to purchase the 2003 Chevy Tahoe.  These checks, says the United States, totaling $46,734.70, were written on Washington's account and posted on his bank account on October 12, 2005.  On October 13, 2005, says the United States, these checks were returned due to insufficient funds.  However, after

Washington deposited $47,140.00 into his account on October 14, 2005, he obtained a cashier's check in the amount of $46,734.40 to cover the purchase of the two vehicles. This cash, says the United States, consisted wholly of proceeds from the Citizens National Bank robbery. Finally, says the United States, investigation of this matter reveals that Matthews gave the 2003 Chevrolet Tahoe to attorney Felicia Perkins to represent him against bank robbery charges. Based on this account of events, the United States submits that the Tahoe was purchased with proceeds from a bank robbery, and as such is subject to forfeiture pursuant to Title 18 U.S.C. § 981(a)(1)(C) and Title 18 U.S.C. § 2113.

Therefore, the United States submits that the sole issue to be resolved at this time is whether the claimant in this case is an innocent owner. If not, then the claimant's motion for summary judgment must be denied.

## THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. The rule requires that the disputed facts be material. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute over trivial facts which are not necessary in order to apply the substantive law does not prevent the granting of a motion for summary judgment. *Id.*, 106 S.Ct., at 2510. The rule also requires the dispute to be genuine. A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id*. This standard

requires the non-moving party to present more than a scintilla of evidence to defeat the motion. *Id.*, 106 S.Ct., at 2511. Of course, a moving party who does not have the burden of proof at trial may properly support a motion for summary judgment by showing the court that there is no evidence to support the non-moving party's case. *Celotex Corporation v. Catrett*, 477 U.S. 317, 324-25, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986). If the motion is so supported, the party opposing the motion must then demonstrate with "concrete evidence" that there is a genuine issue of material fact for trial. *Id.* The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. *Matsushita Electrical Industries Company, Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## **APPLICABLE LAW**

The procedures for forfeiture in this case are governed by the Civil Asset Forfeiture Reform Act of 2000, Title 18 U.S.C. § 983 (CAFRA). Since CAFRA's enactment in 2000, the United States now bears the burden of proving by a preponderance of the evidence that a substantial connection exists between the property to be forfeited and the criminal activity defined by federal statute. Title 18 U.S.C. § 983(c)(1); and *see United States v. Melrose East Subdivision*, 357 F.3d 493, 502 (5th Cir. 2004). On this matter, the United States appears ready to offer substantial proof.

Once the United States establishes that the property is subject to forfeiture, the burden then is on the claimant to establish by a preponderance of the evidence that she is an innocent owner. Title 18 U.S.C. § 983(d)(1). Under this legislation, "[a]n innocent owner's interest in property shall not be forfeited under any civil forfeiture statute," but the person claiming innocent owner status has "the burden of proving that the claimant is an innocent owner by a preponderance of the evidence." Title 18 U.S.C. § 983(d)(1). The statute defines an "innocent owner" to include anyone who has an interest in the seized property who "did not know of the conduct giving rise to forfeiture." Title 18 U.S.C. § 983(d)(2)(A)(I). The statute defines "owner" to be a person with any "ownership interest in the specific property sought to be forfeited," Title 18 U.S.C. § 983(d)(6)(A), but does not include "a person with only a general unsecured interest in, or claim against, the property or estate of another." Title 18 U.S.C. § 983(d )(6)(B)(I).

In the instant case, claimant must show that she was a bona fide purchaser or seller for value (including a purchaser or seller of goods or services for value); and did not know and was reasonably without cause to believe that the property was subject to forfeiture. The United States contends otherwise, that the claimant knew or had reason to know that the Tahoe was subject to forfeiture.

## **ANALYSIS**

The United States argues that the information available to the claimant in this case should have put her, or any reasonable attorney, on notice that the Tahoe was subject to forfeiture, particularly when the claimant knew that Matthews was charged with the crime of bank robbery. Specifically, says the United States, claimant's

suspicions should have been raised by Matthew's financial inability to purchase the vehicle; by Jeremy Washington's similar financial inability; by Mrs. Matthews' questionable statement that she had purchased the Tahoe and simply had given title to Washington; and that claimant had represented Matthews on both armed robberies. Additionally, the United States points to the transcript of a telephone conversation between claimant and Mrs. Matthews, which provides as follows:

*MS. MATTHEWS*: Uh-huh.  (Affirmative response)

*MS. PERKINS*: Okay.  They're ripping and running.  Look, XXXXXXXXXX XXXXXXXXXXXXXX Did you know anything about that?

*MS. MATTHEWS*:   Yes-um.  XXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXX.  XXXXXXXXXXXXXXXXXXXXXXXXXX.

*MS. PERKINS*: Uh-huh.  (Affirmative response) I didn't – XXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXX.  But I'm going to try to – are you there?

*MS. MATTHEWS*: Uh-huh.  (Affirmative response).

*MS. PERKINS*: Okay.  I'm gonna try to get over there ---

*MS. MATTHEWS*: Uh-huh (Affirmative response).

*MS. PERKINS*: – sometime – because – well, I know we've got that – the court appearance on the 23rd.

*MS. MATTHEWS*: Uh-huh (Affirmative response).

*MS. PERKINS*: But, look, this truck is still parked over here at my office and everything.  I haven't talked to Jeremy.  I talked to him one day last week and

he somebody was looking for him or something he said, I can't remember I've got so much going on.

MS. MATTHEWS: Uh-huh

MS. PERKINS: But, look – I – let me tell you something now. I need a good understanding about this truck now –

MS. MATTHEWS: Uh-huh (Affirmative response).

MS. PERKINS: – since – what is that?

MS. MATTHEWS: I don't know.

MS. PERKINS: That's probably my phone here. Hold on a minute. Yeah. I – I need a good understanding about this truck.

MS. MATTHEWS: Uh-huh (Affirmative response).

MS. PERKINS: Where did this truck come from? Because neither of them are making this kind of money. Do you see what I'm saying?

MS. MATTHEWS: Uh-huh (Affirmative response).

MS. PERKINS: I need to know how the truck was bought. I just need to – somebody just needs to tell me.

MS. MATTHEWS: The truck was bought – the truck was bought with my little bitty transaction, what I was doing at the time.

MS. PERKINS: Okay. I –

MS. MATTHEWS: – you know – I did what I had to do – like I told you before. I did what I had to do in – (inaudible) – and I took that mess of loot –

*MS. PERKINS*: Well, see I – I don't – I don't know what – I don't know what that mess is or whatever. But did – did that have anything to do with William?

*MS. MATTHEWS*: No.

*MS. PERKINS*: So you the one who really owned the truck?

*MS. MATTHEWS*: Uh-huh (Affirmative response).

*MS. PERKINS*: Okay. Okay. I just want –

*MS. MATTHEWS*: I just let him – I just let him kept it over there and stuff like that. Because, you know, where I was stying at, where – where I stay in the apartment over here, you know, peoples just told me – peoples always running their mouth and stuff like that and at the time I was working a little bit and had a little bit and that –

*MS. PERKINS*: Okay. I just wanted to make sure that truck hadn't got nothing to do with William and these charges or what ever and the truck is –

*MS. MATTHEWS*:   Naw.

*MS. PERKINS*: – and its legitimate. Do you see what I'm saying?

*MS. MATTHEWS*: Uh-huh (Affirmative response).

*MS. PERKINS*: Okay. Okay. That's no problem.

*MS. MATTHEWS*: That – that there is off on me, you know. That – all that right there is off on me.

*******

By this conversation, says the United States, claimant shows she was on notice that Jeremy Washington did not have the funds to purchase the Tahoe and she has submitted no proof that Mrs. Matthews had that financial ability.

So, says the Untied States, the claimant in the instant case cannot claim to be a bona fide purchaser of the Tahoe because she knew, or should have known, the Tahoe was subject to forfeiture. *United States v. Register*, 182 F. 3d 820, 837 n.21 (11th Cir. 1999). The United States appears to stand ready to make substantial proof on this assertion, and on other genuine issues of fact.

## **CONCLUSION**

Based on all the foregoing facts and the evidentiary burdens imposed by CAFRA, this court is unable to conclude at this time that the claimant is entitled to a judgment in this case, that no genuine issue of fact remains for resolution at trial, or that the claimant was wholly without knowledge that the Tahoe might be subject to forfeiture. Therefore, this court hereby determines that genuine issues of material fact remain for resolution by trial and the claimant's motion for summary judgment [**Docket No. 21**] is denied. The motion of Felecia Perkins for return of property [**Docket No. 14**] also is denied.

The parties shall have forty-five (45) days for completion of discovery, or, until October 5, 2007. Trial is hereby scheduled for October 10 and 11, 2007.

**SO ORDERED** this the 31st day of August, 2007.

        **s/ HENRY T. WINGATE**
        **CHIEF UNITED STATES DISTRICT JUDGE**


CIVIL ACTION NO: 3:06-cv-00475-HTW-LRA
Order denying summary judgment